United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAYEED RAHMAN,
Petitioner,
v.
SERGIO ALBARRAN, et al.,
Respondents.

Case No. 4:26-cv-13708-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 4

Petitioner Rayeed Rahman moves the Court for a temporary restraining order ("TRO") that would, among other things, require his immediate release from ongoing detention by agents of Immigration and Customs Enforcement ("ICE") and prohibit ICE from re-arresting him without notice and a pre-detention bond hearing. Dkt. No. 4. Earlier today, November 13, 2026, Petitioner was arrested and detained by ICE officers without warning at the arrival gate at San Francisco International Airport after his flight landed from New York, where he currently resides. The Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's motion for a TRO, as explained below, to preserve the status quo pending further briefing and a hearing on this matter.[1]

## I. BACKGROUND

### A. Factual Background

According to the record before the Court, Petitioner was born in Bangladesh in 2004 and came to the United States in 2013 on a B-2 visitor visa. *See* Dkt. No. 4-1 ("Shastri Decl.") at ¶ 2.

[1] As has become common across the country, Respondents' decision to arrest Petitioner with no warning after he has lived in the United States for years without incident, combined with the serious consequences of that detention, has given the Court very little time to consider the application and issue a ruling. The case was reassigned to this Court around 2:30 p.m. on a Friday afternoon, the TRO application was not filed until 5:50 p.m., and the Court is issuing this order at approximately 9:00 p.m. on Friday night.

Petitioner's father filed an affirmative application for asylum with U.S. Citizenship and Immigration Services ("USCIS"), listing Petitioner as a derivative. *Id.* at ¶ 3. He appears to have no criminal history in the United States or anywhere else in the world. *Id.* at ¶ 7. Since approximately 2016, USCIS has issued Petitioner employment authorization based on the pending asylum application. *Id.* at ¶ 3. Petitioner flew from John F. Kennedy International Airport to San Francisco International Airport today, and when he disembarked, he was detained by ICE officers at the arrival gate. *Id.* at ¶ 6.

**B. Procedural Background**

Petitioner filed a habeas petition and a motion for a TRO today, November 13, 2026, following his detention at the airport. Dkt. Nos. 1, 4. He contends that he is currently under the jurisdiction of the San Francisco ICE Field Office. *See* Dkt. No. 1 at 3. Counsel provided notice by email of the habeas petition and the motion to Kenneth Brakebill, an attorney in the Civil Division of the U.S. Attorney's Office for the Northern District of California. *See* Dkt. No. 4-2 at ¶ 2.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a temporary restraining order may enjoin conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839, n.7 (9th Cir. 2001). Such an order may be issued only where the plaintiff has established: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiff in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under the Ninth Circuit's sliding scale approach, a plaintiff may alternatively establish that there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the plaintiff," and the other two *Winter* factors are satisfied. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

//

## III. DISCUSSION

The Court finds that the *Winter* factors are met here.

### A. Likelihood of Success on the Merits

Petitioner has shown that, at a minimum, there are "serious questions going to the merits" of his procedural due process claim. The Due Process Clause of the Fifth Amendment protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical constraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases). The Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

In determining what process is due, the Court applies the test under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Orozco Acosta v. Bondi*, No. 25-CV-09601-HSG, 2025 WL 3229097, at *2–4 (N.D. Cal. Nov. 19, 2025); *accord Pinchi*, 792 F. Supp. 3d at 1031 (collecting cases). And in doing so, the Court finds that Petitioner here has a substantial liberty interest in remaining out of custody, the risk of erroneous deprivation is high, and the government's countervailing interests are low.

Petitioner has a substantial liberty interest in remaining out of custody and free from detention, seeing as he has lived in the United States for over a decade without incident and without ever being detained, all of which the government has known the whole time. *See, e.g.*, *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (rejecting as "specious" government argument that petitioner lacked liberty interest where government did not previously seek to detain her while asylum application pending). The risk of erroneous deprivation here is also high. Civil immigration detention is generally permissible only to protect against danger to the community or to prevent a flight risk. *See Zadvydas*, 533 U.S. at

690; *see also* 8 U.S.C. § 1226(a). Petitioner's detention here is not likely to serve either purpose where he has no criminal history and has stable employment and significant ties to the United States. Moreover, detention for its own sake is not a legitimate governmental interest. *See Pinchi*, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

**B. Irreparable Harm**

Petitioner also has demonstrated a likelihood of irreparable injury in the absence of temporary relief. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." (quotation omitted)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quotation omitted). Petitioner was detained today without any pre-detention hearing, and remains in ICE custody.

**C. Balance of Equities and Public Interest**

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

As courts in this district have repeatedly concluded in similar circumstances, the potential harm to Petitioner is significant: he faces immediate and potentially prolonged ICE detention. Meanwhile, the potential harm to the government is minimal. The only potential injury Respondents face is a short delay in detaining Petitioner if a neutral decisionmaker ultimately finds by a preponderance of the evidence that his detention is necessary to prevent danger to the community or that he presents a flight risk. *See Orozco Acosta*, 2025 WL 3229097, at *5 (collecting cases).

The Court further finds that a TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018). The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the motion for a TRO enjoining Respondents from continuing to detain Petitioner is **GRANTED** as detailed below.

**D. Pre-Detention Hearing**

The Court notes that in Petitioner's motion for a TRO he also requests that he be released and receive a pre-detention hearing "before this Court" rather than before an immigration judge. *See* Dkt. No. 4 at 17–21. At bottom, Petitioner argues that there is an "inherent lack of fairness in the Immigration Court system." *Id.* at 17. Petitioner does not provide adequate authority for this request (and certainly provides no basis for a federal court to adopt the extraordinary rationale underlying it), and the Court **DENIES** without prejudice the motion for a TRO to the extent Petitioner asks the Court to commit now to holding any pre-detention hearing itself.

**E. Security**

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of

bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for Temporary Restraining Order is **GRANTED IN PART** to preserve the status quo pending further briefing and a hearing on this matter. Dkt. No. 4. Respondents are **ORDERED** to immediately release Petitioner from Respondents' custody and are **ENJOINED AND RESTRAINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing Petitioner from this District or from the United States. Respondents shall provide a status report confirming Petitioner's release by 9:00 a.m. on Saturday, November 14, 2026. The Court **DENIES** the motion, however, to the extent Petitioner asks the Court to commit to holding any pre-detention hearing itself.

This Order shall remain in effect through Friday, November 20, 2026. Respondents are further **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. Respondents are **DIRECTED** to file a response to the order to show cause and Petitioner's TRO motion by 5:00 p.m. on Monday, November 16, 2026. Petitioner may file a reply by Tuesday, November 17, 2026, at 5:00 p.m. The Court further **SETS** an in-person hearing on the motion to show cause for Thursday, November 19, 2026, at 2:00 p.m. in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA.

//

//

//

//

//

//

//

United States District Court
Northern District of California

The Clerk shall serve this Order via email on Pamela Johann, Chief of the Civil Division of the U.S. Attorney's Office for the Northern District of California, at pamela.johann@usdoj.gov, and Kenneth Brakebill, who counsel previously notified about this case, at kenneth.brakebill@usdoj.gov.

**IT IS SO ORDERED.**

Dated: November 13, 2026

Haywood S. Gilliam, Jr.

HAYWOOD S. GILLIAM, JR.
United States District Judge